Jones *et al. v.* Mercer Pie Co.

(*Knoxville*, September Term, 1948.)

Opinion filed August 14, 1948.

Rehearing denied October 16, 1948.

WAGNER & WAGNER, and HOWARD J. SEARS, all of Chattanooga, Tenn., for plaintiffs in error.

SIZER & CAMERON, of Chattanooga, Tenn., for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Four members of the W. H. Jones family at Dunlap and two members of the Ollie Camp family at Dunlap were poisoned, and thereby made violently ill, by the eating of a chocolate pie which had been baked by a bakery concern in Chattanooga known as the Mercer Pie Company, a partnership composed of J. A. Mercer and Jim Abel. Each of the six persons who were poisoned instituted a suit for damages. They were consolidated into this case At the close of the plaintiffs' proof, the Circuit Judge overruled the motion of the defendant for a directed verdict, which motion was on the ground that "there is no evidence to go to the jury that could sustain a verdict in any of the cases." At the close of all the evidence the motion was renewed and sustained. The Court of Appeals in a very thorough and carefully considered opinion, written for the Court by Judge GOODMAN, reversed and remanded the case on the ground that the evidence made a jury question. Mercer Pie Company has filed this petition for *certiorari*.

The best evidence is that on Monday, May 13, 1946, Mercer Pie Company sold a number of its chocolate pies to a jobber named Morris. Morris sold some of these pies to the Fountain Grocery at Dunlap and some of them to Hixon's Grocery Store in Dunlap, and made de-

livery to each of these groceries around 11 o'clock on Monday morning, May 13, 1946.

On Tuesday morning, May 14, 1946, Mrs. Jones of Dunlap bought one of these pies from the Fountain Grocery and placed it in her refrigerator at home. Mrs. Jones and her husband and two of their children each ate a slice of this pie for supper that night. Within probably two hours each of the four became violently ill to the extent that it was necessary for a doctor to remain the entire night with them.

On the same morning, Tuesday, May 14, 1946, Mrs. Camp purchased one of these pies from the other grocery, Hixon's, and placed it in the cupboard of her home until that night when she and her husband each ate a slice and later that night became violently ill.

In each case the doctor pronounced it food poisoning.

At or about that time the Chattanooga-Hamilton County Health Department received reports of poisoning of several other persons, after eating pie baked by the Mercer Pie Company; and on the 14th day of May, 1946, C. C. Russell, an inspector of the Chattanooga-Hamilton County Health Department, visited the plant of the Mercer Pie Company. He testified that he found "some insanitary conditions" existing around the plant, to-wit, hog pens were located within two blocks thereof; there was no screen door at the rear entrance; the toilet doors were not self closing; the work tables were dirty, there being cracks filled with "old dough and grease"; the mixing bowls were dirty, and in bad repair; the garbage containers were inadequate; the service scales and scales pans were corroded and dirty; the cans for storing fruit mixtures were in bad repair and dirty; floor of the coal storage room was dirty, as well as the

dough troughs and cloths that went over them, and, as well, the pie racks which were out in the open and exposed to air floating particles. Some pies were unwrapped on the date of that inspection on May 14, 1946. The inspector says that he saw some roaches and some evidence of rats.

The inspector took several pies from the plant. Upon inspection they were found to be free of bacteria. His official report showed, however, that pies brought in by people who had been poisoned from pies which they reported to have come from Mercer Pie Company contained harmful bacteria.

 The Mercer Pie Company offered considerable convincing evidence contradictory of and in diminution of the significance of the testimony of this inspector. On that point, however, it would seem to be true that a jury question was made, if, otherwise, there existed a case which should go to the jury.

These pies, as they are put in the baking oven having a temperature of 500 degrees, are contained in a paper like pan that will not burn. When they are taken out of the oven they are placed on these pie racks or tables for cooling and there remain between thirty minutes and an hour. They are then wrapped securely in cellophane wrappers, and during this process are never touched by "human hands." The cellophane wrapper may be removed by any one desiring so to do and replaced without leaving evidence thereof.

When Mrs. Camp and Mrs. Jones purchased their respective pies on Tuesday, May 14, these wrappers were on the pies which they respectively purchased. There is no evidence that they were removed at any time after the Mercer Pie Company had delivered in Chattanooga

the pies to jobber Morris who took them that day to Dunlap for sale to these two groceries. Each of the grocers kept the pies with these wrappers thereon on unenclosed shelves in the store, and it was possible for one or more of their customers to remove the cellophane wrappers while considering whether or not they would purchase the pies. In this connection, however, it appears reasonable to conclude that no purpose would be accomplished by the removal of the cellophane wrappers, because they were transparent.

■ It is the insistence of the petitioner that the "contamination might have come from any one or many sources that could and probably did intervene, between the time the pies left defendant's plant and the time they were eaten by the various plaintiffs." Predicated upon that premise, petitioner invokes the rule that:

"Where injuries may have resulted from either of two (or more) causes for one of which defendant would be liable, and for the other not liable, plaintiff must show with reasonable certainty that the cause for which defendant would be liable produced the result."

While the record does not disclose the reasoning of the Circuit Judge in directing a verdict, his action, no doubt, was predicated upon the above stated insistence of the Mercer Pie Company.

The Court of Appeals expressed the opinion that this case came within the fourth class referred to in *Coca-Cola Bottling Works* v. *Sullivan*, 178 Tenn. 405, 158 S. W. (2d) 721, 725, 171 A. L. R. 1200. The fourth class of cases referred to in that opinion is the class in which the food product is enclosed in a container which may be removed and replaced by the use of care. This presents an "element of fact" which breaks the continuity

between the producer and the consumer, there having intervened a vendor who had possession of the article as to which the container could be removed and replaced. In the above referred to case this Court held that in that class of cases the plaintiff must not only produce "some" evidence that the container had not been tampered with from the time it left the control of the producer until the time it came into the possession of the ultimate consumer, but must show "by a clear preponderance of the evidence" that the package had not been tampered with between the starting and ending point. The Court of Appeals said further, however, this:

"We are further of the opinion that the principle requiring the exclusion of such intervening control as would permit tampering, by a clear preponderance of the evidence, pertains peculiarly to cases (of the nature indicated) wherein a recovery is made dependent upon a presumption of negligence."

The "presumption of negligence" referred to in the above quotation is, in fact, an invoking of *res ipsa loquitur*. The rule is applied to that character of cases in which the injured consumer has offered no evidence of negligence upon the part of the producer of the food product other than that the very presence of the foreign substance in the food or drink raises a presumption of negligence. In those cases the container of the food or drink makes it reasonably improbable that the foreign substance could have penetrated that container between the time the product left the producer and the time that it came into the possession of the injured consumer. In order, however, to avoid a reasonable possibility of an injustice, there is further applied to this character of cases the rule that the plaintiff consumer must show by

a clear preponderance of the evidence that the container was not tampered with between the time the package or bottle was taken from the custody of the producer and the time it came into the possession of the injured consumer.

The opinion of the Court of Appeals clearly distinguishes the instant case from that class of cases to which the *res ipsa loquitur* rule and the intervening possession rule are applied. In the instant case the plaintiffs have offered affirmative evidence of negligence upon the part of the producer in the baking of these pies, in that it has offered evidence of unsanitary conditions existing in the plant where this food product is made. That evidence supports both the common law count of the declaration and the count charging a violation of the statute prohibiting the existence of these unsanitary conditions in such a plant Code section 6597 et seq.

Therefore, we have here a case in which the plaintiff has offered affirmative evidence of negligence upon the part of the producer in the manufacture of these pies and evidence that within three days after they were manufactured they came through different intermediary sources into the possession of two consumers, each of whom was made ill by reason of the fact that these pies were contaminated.

So, the question for determination is whether, in spite of the affirmative evidence of negligence, the injured consumer must go further and establish by clear and convincing evidence that the wrapper containing these pies was not tampered with after the product left the possesion of the negligent producer. If such a burden is placed upon the injured consumer, then, as a practical matter, the producer of food products for sale to the

public may with impunity be guilty of negligence and a violation of salutary statutes. This is true because there is little possibility of the consumer being able to show beyond possibility of doubt that the container was not tampered with during the intervening period.

■ ■ The Court of Appeals held that the rule applicable to this situation is this:

"There must be more than a mere probability that the defendant was negligent. But the plaintiff is not bound to exclude the possibility that the accident might have happened from some other cause than that alleged. He is only required to satisfy the jury by a fair preponderance of the evidence that it resulted from the cause alleged. The facts must tend to exclude any other cause, but the inference of exclusion of any other cause than that alleged need not be urged beyond mere doubt; and where, after a fair consideration of the circumstantial evidence, the more reasonable probability is in favor of negligence, the case is for the jury."

In applying this rule the opinion referred to and quoted from *Standard Oil Co.* v. *Roach,* 19 Tenn. App. 661, 94 S. W. (2d) 63. That was a case in which the petition for *certiorari* was denied.

■ The reasoning and conclusion of the Court of Appeals is correct as a matter of precedent, and is sound as a matter of principle. Any other conclusion under the facts of this case is detrimental to public interest, considering the fact that it is very important that producers of food products intended for consumption by the public should be held to the highest degree of care in the production of that product and in the placing of it upon the market. The application of this rule does not prevent the producer from offering whatever evidence it

can to the effect that the package was tampered with after it left the possession of the produced. Thus a jury question is made. We agree with the conclusion of the Court of Appeals that the trial judge erred in taking the case from the jury.

Petition denied.

## On Petition to Rehear.

The petition for writ of *certiorari* in this case was denied on August 14, 1948. The petition to rehear contains this statement:

"The Court filed no opinion in said cause (not even a memorandum opinion) so it is utterly impossible for petitioner to determine upon what facts or what principles of law the Court based its decision to deny the writ, but it is evident that the Court must have overlooked certain undisputed facts and certain well settled principles of law in its decision."

The memorandum opinion of this Court which concluded with a denial of the petition for *certiorari* was not filed for the reason that we considered the excellent opinion of the Court of Appeals to have conclusively answered each of the insistences made by the plaintiff in error, Mercer Pie Company, who is the petitioner for *certiorari*. This practice and the reason therefor is stated thus in the case of *Beard* v. *Beard,* 158 Tenn. 437, 442, 14 S. W. (2d) 745, 747:

"A written opinion disposing of the question presented through petition for *certiorari* to the Court of Appeals is not necessary in every instance. Denial of the writ of *certiorari* to review the action of the Court of Appeals, without a written opinion or some explanatory memorandum, emphasizes the concurrence of the court in the opinion of the Court of Appeals."

Out of deference to the request of counsel, and because the principle restated in the well considered opinion of the Court of Appeals is of importance, we now file that memo of the Court which concluded with the denial of the petition for *certiorari* on August 14.

It will be noticed from the reading of that memo that every insistence made in the petition to rehear was considered and determined prior to and in the denial of the petition for *certiorari*.

The petition to rehear is denied.

All concur.