John T. BAILIFF and wife, Mary
Ellen Bailiff, Plaintiffs,

v.

MANVILLE FOREST PRODUCTS COR-
PORATION, A Delaware Corpora-
tion, et al., Defendants.

Civ. A. No. J89–0050(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

March 25, 1991.

Samuel H. Wilkins, Jackson, Miss., William D. Vines, III, Knoxville, Tenn., for plaintiffs.

H. Mitchell Cowan, William N. Reed, Jackson, Miss., for Manville Forest Products Corp. and Manville Sales Corp.

Robert C. Galloway and Ann Bowden-Hollis, Gulfport, Miss., for NL Chemicals/NL Industries, Inc.

Christy D. Jones, Thomas E. Williams, Jackson, Miss., for CIBA–GEIGY Corp., E.I. Du Pont De Nemours & Co. and SCM Corp.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs John T. Bailiff and wife, Mary Ellen Bailiff, instituted this products liability action against defendants Manville Sales Corporation (Manville), CIBA–GEIGY Corporation, E.I. Du Pont De Nemours & Company (DuPont), SCM Corporation and NL Chemicals/NL Industries, Inc. (NL),[1] all of which are manufacturers and suppliers of various chemicals and dusts, alleging that during his employment as a plant manager for Colortech, Inc. in Morristown, Tennessee between August 1986 and March 1988, John Bailiff was exposed to the defendants' products which caused him to develop severe respiratory difficulties, including chronic industrial asthma and bronchitis. Plaintiffs have asserted claims based on theories of strict liability, negligence and breach of warranty. Following the conclusion of discovery, all defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, each contending that plaintiffs have produced no competent evidence that exposure to its product caused or contributed to plaintiffs' alleged injuries.[2]

### CHOICE OF LAW

In a diversity action, the court is bound to apply the same law that a state court of the forum would apply, including the forum's conflicts laws. *Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Mississippi applies the substantive law of the state having the most significant relationship to the litigation. *Mitchell v. Craft*, 211 So.2d 509 (Miss.1968); *Crouch v. General Elec. Co.*, 699 F.Supp. 585 (S.D.Miss.1988). The parties agree that Tennessee has the most significant relationship to this litigation. Both of the plaintiffs are residents of Tennessee and Tennessee is the state in which John Bailiff's alleged exposure to defendants' products and the resulting injury occurred. Mississippi's sole connection with this action is that it is the forum for the litigation. The substantive law of Tennessee, therefore, governs the disposition of this action.

### Tennessee Law: Product Identification and Causation

As against each defendant, it is essential that plaintiffs prove, regardless of

1. Manville Forest Products Corporation and Witco Corporation were originally named as defendants but were dismissed by orders of the court after plaintiffs confessed motions by those defendants for summary judgment. OMYA, Inc. and Sachtleben GmbH, which were also named as defendants, were dismissed by the court for lack of *in personam* jurisdiction.

2. John Bailiff seeks to recover damages for his respiratory condition. Mary Bailiff's claim is for loss of consortium.

their theory of recovery, that the product manufactured and sold by that defendant proximately caused the injuries they allege to have sustained.[3] *Higgs v. General Motors Corp.*, 655 F.Supp. 22, 23, 26 (E.D.Tenn.1985), *aff'd,* 815 F.2d 80 (6th Cir. 1987); *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 536–39 (Tenn.Ct.App.1981); *Wyatt v. Winnebago Indus., Inc.*, 566 S.W.2d 276, 280–81 (Tenn.Ct.App.1978). And they must prove as to each defendant that the defendant's product was a "substantial factor" or "predominant" factor in the causation of Mr. Bailiff's alleged injury. *Ricker v. Zinser Textilmaschinen,* 506 F.Supp. 3, 5 (E.D.Tenn.1978), *aff'd,* 633 F.2d 218 (6th Cir.1980); *Roberts v. Robertson County Bd. of Educ.,* 692 S.W.2d 863, 871 (Tenn.Ct.App.1985). Plaintiffs concede that without expert testimony to establish this causative link, they cannot recover.

 Under Tennessee law, for a cause to be a "proximate cause" of an injury, it "must be such that had it not happened the injury would not have been inflicted." *Shouse v. Otis,* 224 Tenn. 1, 448 S.W.2d 673, 676 (1969). Where there are two or more possible causes for the injury, the plaintiff must establish with reasonable certainty that his injury resulted from a cause for which the defendant would be liable. *See Jones v. Mercer Pie Co.,* 187 Tenn. 322, 214 S.W.2d 46, 48–49 (1948) (plaintiff must show with reasonable certainty that cause for which defendant would be liable produced the alleged injury; facts must tend to exclude any other cause but inference of exclusion of any other cause than that alleged need not be urged beyond mere doubt); *Silcox v. Smith*

*County,* 487 S.W.2d 652, 655 (Tenn.Ct.App. 1972) (quoting *Law v. Louisiana & N.R. Co.,* 179 Tenn. 687, 170 S.W.2d 360 (1943) (party with burden of proof need not produce evidence sufficient to exclude every other reasonable conclusion but must make out the more probable hypothesis).

### Motions to Strike

 Products to which John Bailiff claims to have been exposed and which he alleges caused his present respiratory condition include Super Floss (flux calcined diatomaceous earth), a product manufactured by Manville Sales; titanium dioxide, a product manufactured and sold by NL, DuPont and SCM; and Irganox and Irgastab, products manufactured and distributed by Ciba–Geigy. In support of its motion for summary judgment, Manville Sales has supplied the affidavits of two experts, Dr. Stuart M. Brooks and Dr. John E. Studdard, both of whom opine that exposure to Super Floss did not cause or substantially contribute to Mr. Bailiff's chronic respiratory problems. And in connection with their motions for summary judgment, NL, and defendants Ciba–Geigy, DuPont and SCM, have submitted identical affidavits of Dr. John E. Salvaggio in which Dr. Salvaggio states that there is no statistically significant association between exposure to the products manufactured by these defendants and chronic respiratory diseases in humans, including chronic asthma and bronchitis. Plaintiffs have responded to defendants' motions with the affidavit of one of John Bailiff's treating physicians, Dr. Kenneth Allum, wherein Dr. Allum expresses his opinion that chemical com-

---

**3.** Plaintiffs assert that under the prevailing law, since John Bailiff's exposure to the defendants' products in combination is sufficient to cause the medical condition from which he presently suffers, then that is likewise sufficient to impose liability against all defendants, without the necessity of proof that each product caused his condition. In support of this position, plaintiffs rely on cases recognizing and adopting the theory of market share liability in DES and asbestos litigation. *See Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 607 P.2d 924, 163 Cal.Rptr. 132, *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980); *Robertson v. Allied Signal, Inc.,* 914 F.2d 360 (3d Cir.1990). However, as the court

concludes *infra,* plaintiffs' proof is insufficient to establish that any defendant's product, either alone or in combination with the products of other defendants, caused John Bailiff's respiratory condition. In any event, a Tennessee Court of Appeals has refused to apply the doctrine of "enterprise" or "industry wide" liability, and there is no indication that the Tennessee courts would approve a market share approach to liability under the facts. *See Davis v. Yearwood,* 612 S.W.2d 917, 919 (1980) (rejecting enterprise liability and noting further that complaint failed to state legally sustainable recovery arising out of alleged association with or consort in wrongful acts).

pounds, some of which were manufactured and sold by these defendants, "are respiratory irritants and probably contributed to (Mr. Bailiff's) development of asthma and bronchitis."

Obviously recognizing plaintiffs' critical need for expert opinion on the medical causation issue, each of the defendants has moved to strike Dr. Allum's affidavit on the basis that plaintiffs failed to timely designate Dr. Allum as an expert witness in compliance with the Amended Scheduling Order which required expert designation by July 31, 1990. Plaintiffs argue that while they did not designate Dr. Allum as an expert witness in accordance with the scheduling order, they advised defendants, in answer to each defendant's Rule 26(b)(4) interrogatory, that "attending physicians may testify indicating that Plaintiff does have the respiratory condition alleged herein in the Complaint which was caused or contributed to by Defendants' products." In a separate interrogatory response, plaintiffs identified each of Mr. Bailiff's attending physicians. Plaintiffs urge, therefore, that Dr. Allum's affidavit should not be stricken since there was substantive, if not technical compliance with the discovery rules. In further response to defendants' motions, plaintiffs have moved pursuant to Rule 37 of the Federal Rules of Civil Procedure to strike the affidavits of each of defendant's experts asserting that while defendants did timely designate the affiants as experts, they did not, in response to plaintiffs' expert interrogatories, identify them as experts, state their qualifications and give the substance of their facts and opinions together with the bases therefor as required by Rule 26(b)(4).

Though the court is clearly authorized to strike the affidavit of an untimely designated expert or an expert as to whom information has not been provided in compliance with proper discovery requests, *see Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir.1990); *Thompson v. Barnett*, 734 F.Supp. 751, 753–54 (S.D.Miss.1989), the court declines to impose such a sanction in this case. Each side was at least arguably made aware of the other's plans regarding the use of expert testimony. While there

were undoubtedly omissions by all parties as regards the anticipated use of expert witnesses, the court perceives no real prejudice to either side in its decision to permit consideration of each of the affidavits submitted. Accordingly, it is ordered that defendants' motions to strike Dr. Allum's affidavit on the basis of plaintiffs' untimely designation of Dr. Allum as an expert, and plaintiffs' motion to strike the affidavits of defendants' experts on the ground that defendants failed to respond to plaintiffs' Rule 26(b)(4) interrogatories are denied.

Simply because the court has elected to consider Dr. Allum's affidavit does not mean that the court finds therein sufficient evidence of causation to preclude summary judgment for defendants, and in fact, upon a careful analysis of plaintiffs' proof, the court must conclude that summary judgment is indeed appropriate. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court observed, regarding the quantum of proof that will be necessary to avoid summary judgment, that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. A plaintiff's evidence cannot be "merely colorable," but must be "significantly probative." *Id.* at 249–50, 106 S.Ct. at 2510–11. In this case, even having considered Dr. Allum's affidavit, the court is of the opinion that summary judgment should be granted for defendants, for in the court's opinion Dr. Allum's affidavit does not provide "significantly probative" evidence that the product of any one of the defendants was a substantial or predominant factor in producing the injuries Mr. Bailiff claims to have suffered.

*Affidavit of Dr. Kenneth Allum*

Under Rule 702 of the Federal Rules of Evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify [as to a fact in issue] in the form of an opinion or otherwise." The court must determine, in the first instance, whether the proffered

witness is qualified to render an expert opinion on the matter at issue, with an eye toward determining not whether the witness is believable, but whether he has the requisite knowledge, skill, education, training and experience to testify as to the subject matter of his proffered testimony. Whether the witness is qualified as an expert "can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir.1990) (citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir.1984)). The first question presented, therefore, is whether Dr. Allum possesses the necessary qualifications to render an opinion on the issue of a causative link between the product of a defendant and John Bailiff's medical condition. In this regard, there is nothing in Dr. Allum's affidavit to indicate that he has any skills, training, knowledge, education or experience regarding any of the chemicals manufactured by the defendants (other than that contained in the Material Safety Data Sheets, discussed *infra*), or any of the other chemicals to which John Bailiff testified that he was exposed at Colortech which were manufactured by nonparties, or any other dusts and fumes to which Mr. Bailiff testified he might have been exposed prior to his employment at Colortech.[4] There is no indication that Dr. Allum possesses any information concerning exposure times or quantities of chemicals involved in Mr. Bailiff's exposures, or that he has knowledge concerning or has performed any tests that might offer information about any cause and effect relationship between exposure to particular chemicals and Mr. Bailiff's diagnosed conditions. All that is known concerning Dr. Allum's qualifications to render an expert opinion

regarding the subject at issue is that he was one of Mr. Bailiff's treating physicians, and it is not even known what kind of physician he is, whether a general practitioner or specialist of some sort.

*In re Aircrash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir.1986), the court stated that "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." Dr. Allum's opinion, as gleaned from his affidavit, can be summarized as follows: There was no indication in his medical records that John Bailiff had any respiratory condition before he went to work for Colortech[5] but after he had worked at Colortech for several months, he presented with asthma and bronchitis. And because Bailiff was exposed to various chemicals at the Colortech plant which were known to be possible respiratory irritants, those chemicals probably contributed to his medical condition. The court perceives in Dr. Allum's affidavit little, if anything, that would be of benefit to the jury on the issue of causation.

Even in the face of what amounts to a failure to demonstrate the witness' qualifications as an expert, however, the court is hesitant to conclude that Dr. Allum would not be able to attempt to offer an opinion in the case at bar. Nevertheless, the court is convinced that even if he is arguably qualified as an expert, his opinion, as expressed in his affidavit, should be excluded under Federal Rule of Evidence 703 as it lacks reliability and a sufficient foundation to support the conclusions he expresses. In *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987), the Fifth Circuit observed that a trial court may inquire into the bases for an expert's opinions in order to determine admissibility, bearing in mind that issues of credibility and weight of

---

**4.** Bailiff testified by deposition that prior to his going to work at Colortech, he had worked in a variety of positions in the automobile and tool and dye industries between 1956 and 1986, and was exposed over those years to various metal dusts from grinding steel tools, as well as other environmental and industrial chemicals. There is no indication that Dr. Allum has any knowl-

edge concerning Mr. Bailiff's employment history.

**5.** The court notes that in their brief, plaintiffs state that Dr. Allum treated John Bailiff before he went to work at Colortech. However, Dr. Allum first began treating John Bailiff in 1987, after he had already become employed at Colortech.

evidence are for the jury. The court went on to observe that

> [i]n some cases ..., the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. Expert opinion testimony falls into this category when that testimony would not actually assist the jury in arriving at an intelligent and sound verdict. If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.

*Viterbo*, 826 F.2d at 422 (citation omitted). Plaintiffs urge that Dr. Allum's affidavit shows that from a reasonable medical certainty, the breathing of the toxic dusts contained in the defendants' products proximately contributed to the cause of John Bailiff's bronchitis and asthma. The court, however, must conclude that Dr. Allum's affidavit, which contains nothing more than his conclusionary and subjective opinion for which there is revealed an insufficient factual basis, would not be admissible.

> Dr. Allum recites in his affidavit that I have reviewed the Material Data Safety Sheets for the following chemicals to which John T. Bailiff was exposed at the Colortech Plant, and it is my opinion, to a reasonable degree of medical certainty, based on my review of the attached Material Data Safety Sheets and on my treatment, examination, and diagnosis of John T. Bailiff's asthmatic and bronchitis conditions, that the listed chemical compounds are respiratory irritants and probably contributed to his development of asthma and bronchitis.

The Material Safety Data Sheets (MSDS) for a number of various products are attached to Dr. Allum's affidavit. Some of the products identified and described in those documents were manufactured by defendants. Some, however, were not. For example, there are appended to Dr. Allum's affidavit MSDS for Sachtolith–Zinc Sulfide (ZnS) and Lithopone (0.3 ZnS/0.7 BaSO4), manufactured by Sachtleben Chemie GmbH; Zinc Soap of Stearic Acid, manufactured by Witco Chemical Canada Limited; and Calcium Carbonate, Limestone, manufactured by OMYA, Inc. Moreover, the MSDS for some of these products which were manufactured by nonparties reveal that there may be respiratory effects of inhalation. The MSDS for Zinc Soap of Stearic Acid, for instance, recites, "Respiratory congestion due to dust; ... Airborne particles will irritate mucosa of the respiratory system causing sneezing and coughing." The use of an "acceptable dust-mask" is suggested for the use of Calcium Carbonate, manufactured by OMYA.

Additionally, the compilation of MSDS claimed to have been reviewed by Dr. Allum is not comprehensive as it does not include any information concerning a number of other chemicals and dusts to which Mr. Bailiff testified he was exposed. Moreover, as some of the MSDS reveal, the reliability of an opinion on causation based on the information contained therein requires some knowledge as to the amounts and levels of exposure. For example, the MSDS on Ti–Pure * Titanium Dioxide, manufactured by DuPont, states that "[h]uman health effects of *overexposure* by inhalation *may* initially include mild and temporary upper and lower respiratory irritation with cough and shortness of breath. Grossly excessive and prolonged exposure *may* lead to pulmonary fibrosis. ... Individuals with preexisting diseases of the lungs *may* have increased susceptibility to the toxicity of *excessive exposure* (emphasis added)." Under the heading "Safety Precautions," it suggests the following: "Avoid breathing dust. Use best filter respirator *if exposure limits are exceeded* (emphasis added)." And under "Protection Information," it states, "[g]ood general ventilation should be provided to keep dust concentrations *below the exposure limits.*" The MSDS for Titanium Dioxide provided by NL indicates that the product is a "nuisance dust;" under the heading *"Effects of Overexposure"* appear the words "irritating to respiratory system (emphasis added)." Dr. Allum's affidavit does not reveal any knowledge or indicate any opinion as to whether there are acceptable levels of exposure to these chemicals, nor does it demonstrate any information on his part concerning the level of John Bailiff's exposure

or of any safety precautions which Mr. Bailiff may have taken during the course of his work at Colortech. Further, while a plaintiff is not required to exclude every possible cause of his injury, Dr. Allum's affidavit contains nothing to indicate that he eliminated or even considered any probable cause other than exposure to the specific chemicals listed in the attachments generally, or to any one of them specifically.

From Manville's standpoint, noticeably absent from the listing or compilation of MSDS claimed to have been reviewed by Dr. Allum in his quest for the etiology of plaintiff's respiratory condition is any listing for Super Floss, the only Manville product to which Mr. Bailiff was allegedly exposed. Thus, one could not reasonably interpret his affidavit as expressing any opinion regarding a potential causative link between Manville's product and plaintiff's injury. Summary judgment is therefore clearly appropriate for Manville.

In spite of, or perhaps because of the inferiority of the information relied on by Dr. Allum and because of Dr. Allum's failure to provide specific facts regarding causation vis-a-vis defendants' particular products, plaintiffs assert that "[i]t is impossible to tell exactly which of the toxic chemicals caused the plaintiff's injuries, but the combined effects of the breathing of each of the products, caused and contributed to the cause of John T. Bailiff's injuries." This statement, however, is not supported by Dr. Allum's affidavit, or by any evidence of record. In fact, no effort is made by Dr. Allum to refute the assertion in Dr. Salvaggio's affidavit that when an individual is exposed to many different chemicals and dusts, one cannot determine which specific chemical or dust in the environment may have caused an asthmatic or respiratory condition in that individual without specific broncho-provocation challenge tests by the specific agents involved. It is undisputed that no such tests were performed on John Bailiff.

### Conclusion

Plaintiffs argue that summary judgment should not be entered for defendants since it cannot be said under the facts presented that John Bailiff's injuries would have occurred in the absence of breathing of the toxic chemical dusts of the products produced by the defendants. In the court's view, a more accurate and telling statement is that it cannot be said in view of the evidence presented that Mr. Bailiff's injuries would *not* have occurred in the absence of his exposure to the defendants' products. Since it is the plaintiffs' burden to establish causation, it follows that summary judgment should be entered for defendants on their respective motions.

Accordingly, it is ordered that the motions of plaintiffs and defendants to strike are denied. It is further ordered that the motions of defendants for summary judgment are granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.