Mildred **ISABEL**, Charles and Evalina Black, and Elizabeth Gate on behalf of themselves and all similarly situated persons, Plaintiffs,

v.

**VELSICOL CHEMICAL COMPANY,** an Illinois Corporation, Defendant.

No. 04–2997–DV.

United States District Court, W.D. Tennessee, Western Division.

July 30, 2004.

**916**

Arthur E. Horne, III, Murray B. Wells, Horne Gilluly & Wells, PLLC, Memphis, TN, for Plaintiffs.

Gary C. Shockley, Baker Donelson Bearman & Caldwell, Nashville, TN, Jill M. Steinberg, Baker Donelson Bearman Caldwell & Berkowitz, Memphis, TN, for Defendant.

**1.** The Complaint incorrectly named Defendant as Velsicol Chemical Company.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

DONALD, District Judge.

Before the Court is the motion of Velsicol Chemical Corporation [1] ("Defendant") for partial dismissal of the class action complaint of Mildred Isabel, Charles and Evalina Black, and Elizabeth Gate ("Plaintiffs"). Specifically, Defendant requests dismissal of Plaintiffs' claims for 1) strict liability, 2) damages based on emotional distress, 3) attorney fees, and 4) punitive damages. The Court has jurisdiction over this matter based on 28 U.S.C. §§ 1332 and 1441. For the following reasons, the Court grants in part Defendant's motion to dismiss the claim for attorney fees and denies in part Defendant's motion to dismiss the claims for strict liability, emotional distress damages, and punitive damages.

### I. Factual Background [2]

Plaintiffs are owners of real property located in Memphis, Tennessee. Defendant is an Illinois corporation. Plaintiffs bring this lawsuit on behalf of:

> The named plaintiffs and all similarly situated Tennessee property owners that either own or lease real property located directly along the banks of the area commonly known as "Cypress creek" in North Memphis, Shelby County, Tennessee whose land has been affected by the presence of elevated levels of Dieldrin in their soil.

(Class Action Compl. ¶ 25.)

Defendant owns a manufacturing plant in Memphis, Tennessee. In the mid-to-late 1940s, Defendant discovered and began to produce a chemical called Aldrin.

**2.** For purposes of this motion to dismiss, the Court takes the facts as alleged in Plaintiffs' complaint.

Aldrin turns into a chemical called Dieldrin after a certain time.

Defendant began discharging Aldrin/Dieldrin along with wastewater downstream into Cypress Creek, where the chemicals collected in the soils at the creek's bottom and along its banks. Aldrin and Dieldrin are hydrophobic, and both, but especially Dieldrin, do not dissolve easily in water. Therefore, Dieldrin remains in the soil for an extremely long period of time.

Dieldrin is known to pose serious long-term health risks and has been linked to cancer, Parkinson's disease, birth defects, and other health problems. Any amount of Dieldrin above normal levels in the soil can potentially cause long-term health problems to those exposed, and the detection of any above-normal level requires removal of the Dieldrin or evacuation of the premises.

In or about May 2002, Defendant tested various property owners' soils. From those tests, Defendant learned that the properties along the banks of the Cypress Creek contained elevated levels of Dieldrin. Plaintiffs and the other class members own residential property located along the banks of Cypress Creek downstream from Defendant's manufacturing plant.

On or about March 24, 2004, Defendant began informing certain class members that their property contained heightened levels of Dieldrin in the soil. In those letters, Defendant admitted that the compounds got into the creek sediments from wastewater discharges from its manufacturing plant.

The real property of Plaintiffs and the class members has been rendered worthless in its present form as a result of Defendant's discharge of the dangerous chemicals, and Plaintiffs allege that they and the class members have suffered monetary damages. Plaintiffs and the class members now fear for their personal health and well-being, and for the health and well-being of their family members and those who come in contact with their property. Plaintiffs and the class members also fear that the value of their property will be diminished.

## II. Procedural Background

Plaintiffs filed this class action complaint on April 1, 2004, in the Chancery Court of Tennessee for the Thirtieth Judicial District at Shelby County. Plaintiffs alleged state law claims of trespass, nuisance, negligence, and strict liability. Plaintiffs requested compensatory damages for the class members based on the diminution in the value of their property and on their emotional distress in general and specifically over their diminished property values and concerns for their personal health. Plaintiffs also requested punitive damages of up to $1,000,000,000.00. Plaintiffs requested a declaration that Defendant's acts rendered their property worthless and uninhabitable. Finally, Plaintiffs requested attorney fees, costs, pre- and post-judgment interest, and any such further relief that the Court may deem just and proper.

Defendant removed to this Court based on diversity of citizenship on April 26, 2004.

On May 21, 2004, Defendant filed this motion for partial dismissal. Defendant argues that 1) Plaintiffs alleged no basis for strict liability based on either strict products liability or participation in an ultrahazardous activity; 2) Plaintiffs did not allege actual exposure to Aldrin/Dieldrin, and therefore Plaintiffs have no claim for emotional distress damages based on health concerns; 3) Plaintiffs did not allege a contractual or statutory basis for attorney fees; and 4) Plaintiffs alleged no

facts supporting a claim for punitive damages.

Plaintiffs responded on June 18, 2004.

### III. Rule 12(b)(6) Standard

A party may bring a motion to dismiss for failure to state a claim under Rule 12(b)(6). This motion tests only whether the plaintiff has pleaded a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. *See, e.g., Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Neitzke,* 490 U.S. at 326–27, 109 S.Ct. 1827; *Lewis v. ACB Bus. Services, Inc.,* 135 F.3d 389, 405 (6th Cir.1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. *Neitzke,* 490 U.S. at 327, 109 S.Ct. 1827; *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir. 1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1039–40 (6th Cir.1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. *Lewis,* 135 F.3d at 405–06.

### IV. Analysis

#### A. Strict Liability

■ In Tennessee, a defendant engaged in an ultrahazardous activity is held strictly liable for injuries caused to the person or property of another by the defendant's participation in the activity. *Leatherwood v. Wadley,* 121 S.W.3d 682, 699 (Tenn.Ct. App.2003) (holding that automobile racing is not an ultrahazardous activity). Tennessee courts have traditionally classified ultrahazardous activities as "those presenting an abnormally dangerous risk of injury to persons or their property, including the carrying out of blasting operations, the storage of explosives or harmful chemicals, and the harboring of wild animals." *Id.*

Under the Restatement (Second) of Torts, the court may consider the following factors to determine if an activity is abnormally dangerous: (a) the existence of a high degree of risk of some harm to the person, land, or chattels of others; (b) the likelihood that the harm that results from it will be great; (c) the inability to eliminate the risk by the exercise of reasonable care; (d) the extent to which the activity is not a matter of common usage; (e) the inappropriateness of the activity to the place where it is carried on; and (f) the extent to which its value to the community is outweighed by its dangerous attributes. Restatement (Second) of Torts § 520

(1977); *Leatherwood*, 121 S.W.3d at 699–700 (citing Restatement factors).

The application of strict liability for ultrahazardous activities appears to be rather limited in Tennessee, as it is in other jurisdictions. *See, e.g., Ergon, Inc. v. Amoco Oil Co.*, 966 F.Supp. 577, 583 (W.D.Tenn.1997) (noting that Tennessee courts reject the application of strict liability to gas suppliers for escaping gas, even though gas is poisonous, dangerous, and highly explosive, and holding that defendants with escaping petroleum products also should not merit strict liability). *But see Sterling v. Velsicol Chem. Corp.*, 647 F.Supp. 303, 315–16 (W.D.Tenn.1986) (holding that, under facts presented, defendant's creation, location, operation, and closure of toxic chemical dump was abnormally dangerous and ultrahazardous activity), *rev'd in part on other grounds*, 855 F.2d 1188 (6th Cir.1988).

■ The allegations in this case are that Defendant discharged into a creek, which bordered residential property, the chemicals Aldrin/Dieldrin, which pose "serious long-term health risks," such as cancer, Parkinson's disease, and birth defects; that the discharges were substantial enough to cause elevated levels of Dieldrin in the soil along the banks of the creek; and that any level of Dieldrin above normal in the soil requires removal of the chemical or evacuation of the premises. The Court cannot say that this activity as alleged is not ultrahazardous as a matter of law. For example, that the chemicals went into a creek bordering residential property indicates that the location may not have been appropriate for the activity of eliminating dangerous chemicals. The allegations also show that harm from the activity may be great, by causing serious

long-term health problems. Of course, the facts elicited in discovery will determine whether or not the complained of activity was abnormally dangerous so as to direct strict liability, but, for purposes of this Rule 12(b)(6) motion, the allegations are sufficient to state a claim for strict liability based on an ultrahazardous activity. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claim for strict liability.[3]

## B. Emotional Distress Damages

■ Defendant argues that Plaintiffs have not stated a claim for emotional distress damages based on their alleged concerns for their health because they did not allege actual exposure to the chemicals. Plaintiffs respond that they alleged that the soil of their and the class members' property is contaminated with the chemicals, and that it is a logical inference that they came into contact with the soil on their property, thus putting them into contact with the chemicals.

■ What Plaintiffs must show to receive emotional distress damages on this basis is shown by the Tennessee Supreme Court's decision in *Laxton v. Orkin Exterminating Company, Incorporated*, 639 S.W.2d 431 (Tenn.1982). In *Laxton*, the defendant negligently contaminated the plaintiffs' water supply with chlordane, a dangerous, potentially carcinogenic chemical, while spraying for insects. *Id.* at 432–33. The evidence at trial indicated that the plaintiffs drank the contaminated water, but medical examinations revealed that no physical damage had been done to them. *Id.* at 434. Also, the mental anxiety of the plaintiffs did not manifest itself in any physical way. *Id.* at 433. After a

---

**3.** Defendant also argues that Plaintiffs cannot state a claim for strict products liability. Plaintiffs do not argue this point. Given the Court's holding that the complaint does state a claim for strict liability based on ultrahazardous activity, the Court will not address any potential products liability issue as well.

jury verdict for the plaintiffs, the Court of Appeals affirmed the judgment for property damages and out-of-pocket expenses, but reversed the judgment for damages based on mental anguish. *Id.* at 431–32. On appeal, the Tennessee Supreme Court concluded that the plaintiffs could still recover for their emotional distress damages based on their fear for the health and welfare of themselves and their children, despite the fact that the traditional requirements of the physical injury or manifestation rule had not been met. *Id.* at 434.

> In our opinion, in addition to cases where it has previously been allowed, recovery for the negligent infliction of mental anguish should be allowed in cases where, as a result of a defendant's negligence, a plaintiff has ingested an indefinite amount of a harmful substance. In such cases the finder of fact may conclude that the plaintiff has sustained sufficient physical injury to support an award for mental anguish even if subsequent medical diagnosis fails to reveal any other physical injury. The period of mental anguish, of course, would be confined to the time between discovery of the ingestion and the negative medical diagnosis or other information that puts to rest the fear of injury.

*Id.; cf. Carroll v. Sisters of Saint Francis Health Servs., Inc.,* 868 S.W.2d 585 (Tenn. 1993) (holding that, to recover damages for negligent infliction of emotional distress based on fear of contracting AIDS, plaintiff must allege actual exposure to HIV). In other words, the de minimus "physical injury" of ingesting the contaminated water sufficiently satisfied the physical injury or manifestation rule so as to justify the award of emotional distress damages. ▪ The Court later reaffirmed the basis of *Laxton* for general negligence claims that allege emotional distress damages as part of multiple types of claimed

damages. *See Estate of Amos v. Vanderbilt Univ.,* 62 S.W.3d 133, 136–37 (Tenn. 2001). The Court differentiated such general negligence claims with emotional distress damages from those for damages based solely on negligent infliction of emotional distress. Negligent infliction of emotional distress claims no longer require proof of a physical injury or manifestation in Tennessee, but they do have other heightened proof requirements. *See Camper v. Minor,* 915 S.W.2d 437, 446 (Tenn.1996). On the other hand, negligence actions that claim damages for emotional distress in addition to other types of damages do not involve the same heightened proof. *See Amos,* 62 S.W.3d at 137. *Camper* did not affect the longstanding rule that emotional injuries are compensable if accompanied by additional claims for damages. *Id.*

Plaintiffs in this case specifically allege damages based on the diminished value of their real property and on their emotional distress based on fears over their health. Notwithstanding the general language of *Amos,* under *Laxton,* it appears that emotional distress damages may not be "parasitic" upon property damages alone, because the plaintiffs in *Laxton* suffered property damage based on diminished value, but the Court still required them to prove some de minimus "physical injury," specifically, ingestion. *Laxton,* 639 S.W.2d at 431, 434. Thus, it appears that Plaintiffs here must also prove some sort of "physical injury," even though they also alleged property damage.

It is taken as true for this motion that the soil on Plaintiffs' and the other class members' property was contaminated with Aldrin/Dieldrin. Plaintiffs argue that, since the contaminated soil was on their real property, they necessarily came into contact with it, thus providing the required allegation of actual exposure. The Court

finds this to be a logical inference. Plaintiffs obviously need not allege that they ingested the contaminated soil; unlike in a contaminated drinking water case, the Court could not realistically require ingestion. Contact appears to satisfy the exposure requirement under the circumstances, and logic dictates that Plaintiffs came into contact with the soil on their property. Plaintiffs, of course, will have to prove exposure should this case proceed to trial, but, for the purposes of this Rule 12(b)(6) motion, the Court holds that the allegations in the complaint sufficiently state a claim for emotional distress damages based on fear over health problems. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claim for such emotional distress damages.

### C. Attorney Fees

■ Under the American rule, "attorney's fees may not be awarded to the prevailing party absent statutory authorization or an agreement between the parties so providing." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn.1998) (holding that there would be no exception to American rule on attorney fees for legal malpractice claims). The American rule is firmly established in the courts of Tennessee. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn.2000).

Defendant argues that Plaintiffs fail to state a claim for attorney fees because they do not allege any statutory or contractual right for such an award. The Court agrees that any such allegation is absent from the complaint, and, indeed, Plaintiffs do not contest this point. Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' claim for attorney fees.

### D. Punitive Damages

■ Under Tennessee law, a court may award punitive damages if the plaintiff proves by clear and convincing evidence that the defendant acted either intentionally, fraudulently, maliciously, or recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn.1992).

A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. A person acts fraudulently when (1) the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage, and (2) another is injured because of reasonable reliance upon that representation. A person acts maliciously when the person is motivated by ill will, hatred, or personal spite. A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.

*Id.* (citations omitted).

■ Defendant contends that Plaintiffs have not pled any facts indicating that Defendant's alleged tortious conduct was intentional, fraudulent, malicious, or reckless. Plaintiffs respond that the complaint at least raises the issue of intentional conduct and that the facts alleged show recklessness.

Taking the allegations in the complaint as true, the Court finds that Plaintiffs alleged facts sufficient to show at least recklessness supporting an award for punitive damages. Plaintiffs alleged the following facts: that Defendant discovered and produced Aldrin/Dieldrin, that Defendant admits discharging Aldrin/Dieldrin with wastewater into Cypress Creek, which borders residential property, and that Aldrin/Dieldrin is known to pose serious long-term health risks to humans.

922

From the fact that Defendant was the discoverer and producer of Aldrin/Dieldrin, the Court may legitimately infer that Defendant knew of the serious long-term health risks that the chemicals posed. The allegations that Defendant discharged into a creek bordering residential property chemicals known to pose serious long-term health risks to humans are sufficient to allege recklessness under the standard set forth in *Hodges*. As such, the complaint alleges facts sufficient to support an award of punitive damages based on recklessness. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claim for punitive damages. The Court need not address the potential for punitive damages on the other bases described above.

## V.   Conclusion

Plaintiffs' complaint fails to state a claim for attorney fees because it does not allege a contractual or statutory right to them. Accordingly, the Court **GRANTS** in part Defendant's motion to dismiss the claim for attorney fees. Plaintiffs' complaint does state a claim for strict liability based on ultrahazardous activity, emotional distress damages based on fear over health, and punitive damages based on at least recklessness. Accordingly, the Court **DENIES** in part Defendant's motion to dismiss the claims for strict liability, emotional distress damages, and punitive damages.