# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 19, 2002 Session

## CHARLES LEATHERWOOD, ET AL. v. JOSEPH SCOTT WADLEY, ET AL.

**A Direct Appeal from the Circuit Court for Henderson County**
**No. 99046     The Honorable Donald H. Allen, Judge**

---

**No. W2002-01994-COA-R3-CV - Filed February 11, 2003**

---

Plaintiff spectator/invitee was struck and injured by wheel that broke and caromed from defendant driver's racing vehicle during a stock car race at defendant-owner's motor speedway. Plaintiff brought claims against defendants alleging negligence, gross negligence, and strict liability for failure to exercise the required degree of care in the operation of, or participation in, an ultrahazardous activity, and included an additional action against defendant-driver seeking recovery on strict liability grounds under the Tennessee Products Liability Act. Wife of spectator joined in suit against defendants, seeking recovery for loss of consortium. The circuit court granted defendants' individual summary judgment motions. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

J. Houston Gordon and Kim E. Linville, Covington, For Plaintiffs-Appellants, Charles Leatherwood and Shelby Leatherwood

Russell E. Reviere, Keely N. Wilson, Jackson, For Defendant-Appellee, Wayne Moore
Wesley A. Clayton, Andrew V. Sellers, Jackson, For Defendants-Appellees, Joseph Scott Wadley and Garnertown Speedway

## OPINION

Plaintiff, Charles Leatherwood and wife, Shelby Leatherwood, filed suit for personal injuries and loss of consortium respectively against defendants, Joseph Scott Wadley, Garnertown Speedway, and/or Joseph Scott Wadley d/b/a Garnertown Speedway, and Wayne Moore. The complaint seeks compensatory and punitive damages for alleged serious and permanently disabling injuries suffered by the plaintiff, Charles Leatherwood, when he was struck by a wheel from the racing vehicle of defendant Moore during a race at Garnertown Speedway, a permanent dirt race track owned and operated by the defendant, Wadley. The complaint is premised primarily on the theories of

negligence and gross negligence and alleges that defendants are strictly liable for injuries that resulted from the operation of or participation in the asserted ultra-hazardous activity of stockcar racing. The complaint alleges that Moore is strictly liable for the injuries suffered by plaintiff pursuant to T.C.A. § 29-28-102 as the manufacturer of the racing vehicle which he was driving.

On August 28, 1998, Charles Leatherwood visited Garnertown Speedway for the purpose of watching stock car races. Leatherwood traveled to the Speedway as the guest of Joe Richardson ("Richardson"), and the two men were accompanied by Richardson's son Bart, a race participant that night, and one other gentleman. Leatherwood payed a $15.00 entry fee at the gate leading to the Speedway pit area, $8.00 of which plaintiff believed "was made for the purpose of procuring insurance to protect him in the event of any incident and/or accident on the premises."[1] Plaintiff Leatherwood initially maintained that the August 28 race marked the first time that he had ever attended an automobile or motor vehicle race. In plaintiffs' Second Amended Complaint, Leatherwood clarified that August 28 was the first time that he had ever attended an automobile or motor vehicle race at this particular Garnertown Speedway location. However, in his deposition testimony, Leatherwood acknowledged that the August 28 trip was his second visit to Garnertown Speedway in 1998,[2] and further noted that he had visited several racetracks in his lifetime, had been a fan of racing since childhood, and had even participated in stock car racing in West Memphis in 1959 and 1960.

In their Second Amended Complaint,[3] plaintiffs contend that Leatherwood sustained serious and permanently disabling injuries[4] while attending the August 28 races at Garnertown Speedway, when he was struck in the head and torso by a wheel that "suddenly and without warning" broke from a car raced by defendant Moore during the final heat of the night, and "catapulted" into the pit

---

[1] According to the deposition testimony of Ozella Wadley, the mother of defendant Wadley and the person responsible for selling passes at the pit gate on the evening of August 28, 1998, no part of the $15.00 admission fee charged to spectators entering the pit area was collected for the payment of insurance. Ms. Wadley noted that the extra price charged to spectators for pit passes, as compared to the price charged spectators for general admission, was assessed solely for the privilege of being allowed to watch the races from the pit area.

[2] Leatherwood further admitted that he watched races from the pit area during his first visit to Garnertown Speedway in 1998.

[3] Plaintiffs' initial complaint listed Joseph Scott Wadley, Ozella Wadley, Jeff Wadley, Garnertown Speedway and/or Joseph Scott Wadley d/b/a Garnertown Speedway, Donnie Moore, Moore Brothers Truck Sales, Inc., Wayne Moore, and Moore's Auto Parts & Machine Shop as defendants. Plaintiffs' Second Amended Complaint, filed December 13, 2001, listed Joseph Scott Wadley, Garnertown Speedway, and/or Joseph Scott Wadley d/b/a Garnertown Speedway, and Wayne Moore as the sole defendants.

[4] Leatherwood asserts that he "suffered a severe spinal cord injury, injury to his neck, partial paralysis, and other permanent and disabling injuries to be proven at trial."

area where plaintiff was standing.[5]  Leatherwood conceded that at the time of his injury he was standing in the pit area with his back to the racetrack, watching Richardson and his son load their racing vehicle into a trailer.

Garnertown Speedway is an oval racetrack that was built in 1994 by defendant Wadley's father.  The track consists of two primary spectator areas, the grandstands (general admission) and the pit area.  As stated, spectators are required to pay a higher admission price for entry into the pit area.  At least a portion of the pit area is protected from the racetrack by a fence and several concrete barriers.  Leatherwood testified in his deposition that he did not remember any warning or danger signs posted around the racetrack on August 28, but expressed uncertainty as to whether any signs were actually affixed, stating: "I have no idea if there is or not.  They may be out there now, or they may have been there then.  I can't say whether it was or not because I did not see them."  Wadley testified that warning signs were posted at the ticket booth and the pit gate on August 28.  According to Wadley, the sign located at the general admission ticket booth warned spectators that racing is dangerous, while the pit gate sign provided a second warning that racing is dangerous and included a statement that Garnertown Speedway was "not responsible for accidents from parts flying off of vehicles or mud."

As the basis for their negligence and gross negligence claims against defendant Wadley and Garnertown Speedway, plaintiffs assert that as a spectator, Leatherwood was a business guest or invitee of Wadley and Garnertown Speedway, and was therefore owed a duty of care.  Plaintiffs further averred that Wadley was operating Garnertown Speedway without a license, in violation of T.C.A. § 55-22-101, a Class A Misdemeanor.[6]  The Leatherwood's maintained that Wadley's operation of Garnertown Speedway without a license "amounts to negligence *per se* as a matter of

---

[5] Plaintiffs describe the accident as follows:

> During the last race, as he raced his car around the Garnertown track, a wheel from Defendant Moore's vehicle failed and part of the wheel and tire on it catapulted from the track and through the pit area, bounced across the area, and struck the Plaintiff, Charles Leatherwood, in his back and head, knocking him to the ground."

Defendant Moore offered sworn testimony regarding the events surrounding the accident, explaining: "As I was entering the turn I felt the car give, lay down on the right side, the right rear.  The car just came to a stop because I knowed something was broke, so I stopped the car."  Once his car had been towed from the track, Moore discovered that the center had broken out of his right rear wheel.  Moore replaced the damaged wheel, but did not retain the damaged portion, and testified that he does not possess, or know the whereabouts of,  the wheel.

[6] As part of their Answer to plaintiffs' Second Amended Complaint, defendants Wadley and Garnertown Speedway summarily denied allegations that they were illegally operating an unlicensed race track in violation of T.C.A. § 55-22-101, and further denied that their alleged illegal operation constituted negligence *per se*.  However, in his deposition testimony, defendant Wadley confirmed that Garnertown Speedway was not a licensed racetrack on August 28, 1998, but maintained that he was not aware of the license requirement until a cease and desist order was issued by the State of Tennessee.  Wadley affirmed that he obtained a license to operate Garnertown Speedway upon learning of the statutory requirement.

law." In support of their negligence and gross negligence claims against Wadley and Garnertown Speedway, plaintiffs rely upon the following factual assertions in the "Second Amended Complaint:"

> Plaintiff avers that the injuries he suffered were the direct and proximate result of negligence, gross negligence, violation of state statute and reckless disregard for the safety of others on the part of the Defendants, Joseph Scott Wadley, Garnertown Speedway, and Joseph Scott Wadley d/b/a Garnertown Speedway in that said Defendants, and each of them, participated in, conducted, and operated an illegal race track and, in addition thereto, committed the following acts of negligence and gross negligence:
>
> (e) Failure to provide adequate warning, and/or barriers to protect the public, such as Charles Leatherwood from injury;
>
> (f) Failure to adequately warn patrons, such as Charles Leatherwood, of the dangers inherent in being near to or adjacent to a track while automobiles were being raced;
>
> (g) Failure to adequately inspect, check, or otherwise assure that the automobiles being raced on the Defendants' race track were properly constructed, maintained, and/or repaired prior to allowing the same to participate in any race;[7]
>
> (h) Failure to coordinate the timing, and separation of racing events in such a way that those, such as Plaintiff, Charles Leatherwood, who were in or adjacent to the pit area and/or adjacent to the race track area would have proper protection from incidents such as that occurring herein;
>
> (I) Failure to adequately post warnings and/or barriers and/or other safety devices to prevent the injury to individuals;

---

[7] In their Answer, defendants Wadley and Garnertown Speedway denied that they were negligent or grossly negligent in their inspection of automobiles participating in races at Garnertown Speedway on August 28, 1998. Wadley admitted on deposition that he did not inspect defendant Moore's car at any time during the night in question. Jeffrey Wadley, the speedway technician, also failed to inspect Moore's vehicle prior to defendant's heat race, and confirmed that he never saw the broken wheel after the accident.

With regard to the inspection process followed at Garnertown Speedway, defendant Wadley admitted in his deposition testimony that Garnertown Speedway has a mandatory vehicle inspection procedure for first-time participants, but does not require safety checks for vehicles that have raced at defendant speedway on prior occasions.

-4-

(j) Failure to fully, adequately and completely advise patrons, such as Plaintiff, Charles Leatherwood, attending a racing event of the hidden danger of being close to and/or adjacent to the racing area;

(k) Failure to warn, announce, flag or otherwise advise patrons, such as Charles Leatherwood, of the start of the race and to escort or otherwise protect him from the dangers created thereby;

(l) Failure to properly design and/or create a safe and secure pit area and race track.

As stated, plaintiffs also asserted claims of negligence, gross negligence, and strict liability against defendant Moore, premised on the following factual allegations:

Plaintiffs aver that the Defendant, Wayne Moore, is the designer, assembler, fabricator, builder, owner, driver, and person responsible for a certain racing vehicle raced at the Garnertown Speedway on August 28, 1998. Said Defendant had a nondelegable duty to assure that said vehicle was safe for use on the track and for racing thereon. In breach of said duty, a wheel on the said Defendant Wayne Moore's race car was improperly constructed, installed and/or defective and, as a result of such condition, the wheel came loose, broke off and/or was thrown off of the vehicle, striking Plaintiff, Charles Leatherwood.

Plaintiffs aver that the Defendant, Wayne Moore, was negligent and grossly negligent in operating a racing vehicle on a track in close proximity to patrons such as Plaintiff, Charles Leatherwood, which was unreasonably dangerous or defective, inadequately maintained, checked, inspected and/or repaired and, as a direct result of such negligence and gross negligence, the said Defendant, Wayne Moore, participated in an inherently dangerous activity without providing the necessary precautions and protections to the public, and as a result thereof, are liable to the Plaintiff, Charles Leatherwood, for the injuries suffered herein as a matter of law.

Plaintiffs aver that the Defendant, Wayne Moore, is the designer, assembler, producer and fabricator of a certain racing vehicle which he assembled by placing an engine[8] and other component parts into

---

[8] Moore testified on deposition that he purchased the 350 Chevrolet engine that was in his car for the August 28 race from J. Dickens Engine Performance, and personally modified it to meet the "specs" listed in the Garnertown

(continued...)

and on a GRT chassis, including wheels and tires[9] and other parts and equipment on said racing vehicle and is, therefore, a "manufacturer" as defined by the Tennessee Products Liability statute, T.C.A. § 29-28-101.

At all times pertinent herein, the Moore vehicle was in a defective condition or unreasonably dangerous condition at all times while it was within the control and possession of the Defendant, Wayne Moore, who was the owner, maintainer, and operator thereof, and said product (vehicle) was not altered by any third person.

As a result, the Defendant, Wayne Moore, is <u>strictly liable</u> for any and all injuries suffered by the Plaintiffs herein as a result of the unreasonably dangerous or defective nature of the product placed on the race track and used by the Defendant, Wayne Moore, at all times pertinent herein.

(Emphasis in original.)

In addition to the negligence and gross negligence claims raised against Wadley, Garnertown Speedway, and Moore, plaintiffs also included a claim of strict liability, asserting:

Plaintiffs aver that all of the above Defendants, Joseph Scott Wadley, Garnertown Speedway and/or Joseph Scott Wadley d/b/a Garnertown Speedway, Wayne Moore, and each of them, were voluntarily engaged in an ultra-hazardous and extraordinarily dangerous activity which required of them the highest degree of care and that, in violation of such high degree of care, that the said Defendants violated their duty of the highest degree of care and as a direct and proximate result of such breaches, the Plaintiff, Charles Leatherwood, suffered the injuries alleged herein.

The Plaintiffs aver that the operation and activities of conducting the business of promoting the racing of automobiles on a race track where the public is invited to observe imposed upon the said Defendants' <u>strict liability</u> for the operation of an inherently

---

[8](...continued)
Speedway rule book for GRT racing vehicles.

[9] George "Donnie" Moore, the brother of Wayne Moore, testified on deposition that he personally put all four wheel packages (the tire and the wheel) on Wayne Moore's car while at Garnertown Speedway on August 28. When questioned, Donnie Moore could not give a certain answer as to who had assembled the tire on the wheel. Donnie Moore further testified that he only makes a visual inspection of the wheels prior to a race.

dangerous and ultra-hazardous activity and, as a result of the operation of such activity, the Defendants, Joseph Scott Wadley, Garnertown Speedway and/or Joseph Scott Wadley d/b/a Garnertown Speedway, had a nondelegable duty to protect the Plaintiff, Charles Leatherwood, and are strictly liable to the Plaintiff, Charles Leatherwood, for his injuries as a matter of law under the common law of Tennessee.

Plaintiffs aver that the Defendant, Wayne Moore, was likewise engaged in an ultra-hazardous and inherently dangerous activity and was participating in the racing of automobiles at an unlicensed and illegally operated race track in close proximity to the public, and as a direct and proximate result thereof, the Plaintiff, Charles Leatherwood, was injured. Under the common law of Tennessee, said Defendant had a nondelegable duty to protect Plaintiff, Charles Leatherwood, and is strictly liable to the Plaintiff, Charles Leatherwood, for his injuries resulting from their participation therein under strict liability.

(Emphasis in original).

Defendants Wadley d/b/a Garnertown Speedway, and Moore both filed individual answers to plaintiffs' Second Amended Complaint. In their Answer, Wadley and Garnertown Speedway denied all allegations of negligence, disclaimed that they were involved in an ultrahazardous and abnormally dangerous activity, and asserted that "Defendants exercised that degree of care which an ordinary person or entity would exercise under the circumstances existing at the time and place of the incident." Defendants Wadley and Garnertown Speedway raised additional affirmative defenses, as quoted directly from their Answer:

24. In the event that the Plaintiffs have set forth a prima facie cause of action as against these Defendants, these Defendants would rely upon the Doctrine of Modified Comparative Fault and seek to have their fault, if any, compared to the fault of the Plaintiffs. The application of the Doctrine of Modified Comparative Fault to this cause must result in no liability as against these Defendants or, in the alternative, in a reduction in liability as against these Defendants.

25. These Defendants would allege that the sole and proximate cause of the injuries sustained by the Plaintiffs were by the negligent acts of the Plaintiff, Charles Leatherwood, including but not limited to the following:

(a) Plaintiff failed to heed the warning signs and regulations posted at Garnertown Speedway.

(b) Plaintiff failed to keep a proper lookout toward the direction of the race.

(c) Plaintiff failed to heed the apparent verbal warnings that were sounded at the time just prior to the incident that were intended to alert Plaintiff of a possible accident.

(d) Plaintiff negligently failed to avoid an accident upon the appearance of danger.

26. These Defendants would further allege that Plaintiff, Charles Leatherwood, was guilty of negligence per se. Therefore, the Plaintiff may not recover from these Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

28. These Defendants would further allege that Plaintiff, Charles Leatherwood, by voluntarily entering a restricted area, assumed full responsibility for any risk of bodily injury, death, or property damage arising out of or relating to the racing events.

29. These Defendants would allege that the incident on August 28, 1998 was an unavoidable accident.

In his Answer, defendant Moore also denied all allegations of negligence and liability levied against him by plaintiffs. Moore admitted to working on the GRT vehicle that he raced at Garnertown Speedway on August 28, but denied that he is a "manufacturer" under the Tennessee Products Liability Act. Like defendants Wadley and Garnertown Speedway, Moore also raised the affirmative defense of comparative fault.

On November 1, 2001, Moore filed a Motion for Summary Judgment, along with a memorandum in support of this motion. In his memorandum, Moore rebuffed plaintiffs' allegation of negligence, asserting that "the center of the wheel breaking off was a latent defect and thus it was not a foreseeable event and defendants cannot be liable for any damages arising therefrom." Moore further argued that "[n]othing the defendants could or should have done would have informed them that the center of the wheel contained a latent defect and was going to break." Addressing plaintiffs' strict liability claim for participation in the allegedly ultrahazardous activity of automobile racing, Moore asserted that automobile racing, applying the factors set forth in Restatement (Second) Torts § 520, does not constitute an ultrahazardous activity.

On January 18, 2002, Moore filed a second Motion for Summary Judgment to address plaintiffs' claim of strict tort liability under the Tennessee Products Liability Act, raised in their Second Amended Complaint. Moore challenged that plaintiffs were not entitled to recovery under the Tennessee Products Liability Act for the following reasons: (1) Leatherwood was not a user or consumer of the alleged defective product (racing vehicle), but rather merely a bystander; (2) Moore did not qualify as a manufacturer under T.C.A. § 29-28-101, as required by T.C.A. § 29-28-105; and (3) plaintiffs failed to establish that Moore's car was in a defective or unreasonably dangerous condition as mandated under T.C.A. § 29-28-105.

Defendants Wadley and Garnertown Speedway filed a single Motion for Summary Judgment on February 6, 2002, along with a supporting memorandum of law. In their supporting memorandum, defendants asserted that plaintiffs should be precluded from recovering damages for Leatherwood's injuries, on the basis that flying debris is an inherent risk associated with dirt track racing. Defendants, as summarized in the following passage, contend that race spectators at Garnertown Speedway assume the risk of injury from flying debris, and that Charles Leatherwood, as an experienced race fan, was well aware of this risk:

> [I]t is well established that the Plaintiff should have been aware of any possible danger and should have taken some precautions for his own safety; however, at the time of the incident, the Plaintiff admitted to having his back to the racetrack. The Defendants aver that any reasonable spectator in the pit area could foresee that debris can enter the pit area in the event of an accident or mechanical failure. This risk of being hit by a loose wheel or other debris when watching a race from the pit area is a risk incidental to the entertainment and one that should be assumed by the spectator. Any law to the contrary would place an unreasonable burden upon the operator of the racetrack.

Defendants alternatively suggested that if the court finds that plaintiffs are not precluded from recovery, recovery should be predicated on the principles of negligence rather than the doctrine of strict liability. Arguing against strict liability on the basis that automobile racing is not an ultrahazardous activity, defendants asserted that they had no duty to inspect the racing vehicle, and no reason to know of this particular alleged defective condition.

On April 23, 2002, the circuit court entered an Order granting the summary judgment motion of defendants Wadley and Garnertown Speedway. Finding that no genuine issue of material fact existed as to the negligence and liability of Wadley and Garnertown Speedway, the court stated its holding as follows:

> The Court finds that the activity of dirt track stockcar racing is not an ultra-hazardous or abnormally dangerous activity, and therefore, the claims of strict liability are dismissed and the Defendants', Joseph Scott Wadley and Garnertown Speedway, Motion for Summary

Judgment is granted on the claim of strict liability. Further, the Court finds that the Plaintiffs have failed to show that anything other than a latent defect in the wheel rim was the proximate cause of the accident. The Court finds that adequate warning signs were posted at the pit gate entrance at Garnertown Raceway and that the Plaintiff was a knowledgeable spectator of stockcar racing and did not take due care for his own safety by turning his back to the racetrack.

That same day, the court entered a second Order granting defendant Wayne Moore's Motion for Summary Judgment. The court relied upon its ruling set forth in a letter dated March 8, 2002, attached to the Order as an exhibit and incorporated by reference therein, in finding that no genuine issues of material fact existed as to the negligence and liability of defendant Moore. With regard to plaintiffs' claim of strict liability under the Tennessee Products Liability Act, the court stated:

1) The Court finds that the plaintiff, Charles Leatherwood, is not a user or consumer of the alleged defective product, i.e., the racecar, and therefore he is not entitled to recovery under the Tennessee Products Liability Act. Additionally, the Court finds that the defendant, Wayne Moore, did not sell any product that was defective and/or unreasonably dangerous and which caused harm to a user or consumer.

Obviously, in this case, the plaintiff was simply a bystander spectator in the pit area of the Garnertown racetrack at the time of his injury and in no way could he be considered in a class of persons for which the Tennessee Products Liability Statute is intended to protect.

2) The Court finds that the defendant, Wayne Moore, is not a manufacturer of this product, i.e., the racecar. Although the Court recognizes that the definition of a "Manufacturer" includes the "assembler of any product or its component parts," it is equally clear that his racecar product was not assembled by Mr. Moore for the purpose of selling such product....

3) The Court finds that the racecar as "assembled" was not "unreasonably dangerous" due to the defendant, Wayne Moore's, negligent assembly or due to his failure to properly inspect or test the wheel. It does appear that some visual safety inspection of the car and the wheels was done by Mr. Moore or by his brother, Donnie Moore, prior to the defendant driving the racecar. Obviously, the defendant, Wayne Moore, would be the one person most likely to be injured as a result of his supposed negligent "assembly" of the racecar. I doubt that Mr. Moore would want to put himself or anyone

else at risk by driving an "unreasonably dangerous" or defective product.

Clearly, the defendant would want to take all reasonable steps and precautions to insure his safety prior to driving this race car. Furthermore, under either the prudent manufacturer test and/or the consumer expectation test, the plaintiff has not shown that the defendant ever marketed the product or that Mr. Leatherwood was a consumer of the product.

(Emphasis in original).

Addressing plaintiffs' claim that Moore was engaged in an ultrahazardous activity, the court determined, applying the six factors set forth in §§ 519 and 520 of the Restatement (Second) Torts, that the "activity of dirt track, stock car racing is not an ultra-hazardous or abnormally dangerous activity." Finally, the court ruled that Moore was entitled to judgment as a matter of law on the issue of negligence. As support for this ruling, the court noted that plaintiffs "failed to produce any evidence showing that anything other than a latent defect in the wheel rim was the immediate cause of the accident," and further concluded that the "evidence shows that the defendant, Wayne Moore, did take all reasonable steps to assure himself and others that the vehicle he was about to race was safe under the circumstances." In addition to these findings, the court took specific note of the fact that Leatherwood was an experienced race spectator, that plaintiff was standing with his back to the racetrack at the time of the accident, and the undisputed facts of the case indicate that warning signs were posted at the pit gate entrance.

Plaintiffs appealed, presenting the following issues for review: (1) Whether the trial court erred in granting summary judgment in favor of defendants Wadley and Garnertown Speedway as to the issues of negligence and gross negligence; (2) Whether the trial court erred in granting summary judgment in favor of defendant Moore on the issues of negligence and gross negligence; (3) Whether the trial court erred in finding that defendants Wadley, Garnertown Speedway, and Moore "were not involved in an ultrahazardous or inherently dangerous activity to which strict liability should apply;" (4) Whether the "trial court erred in finding, as a matter of law, that Defendant Wayne Moore was not liable under strict products liability as defined in T.C.A. § 29-28-102;" and (5) Whether the "trial court erred in failing to find that Plaintiffs were entitled to all reasonable and favorable inferences" by refusing to apply an adverse presumption against defendant Moore when Moore was unable to produce the broken wheel.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that

party, and discard all countervailing evidence. *See id*. In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

## I.

The first issue presented by plaintiffs for review is whether the trial court erred in granting summary judgment in favor of defendants Wadley and Garnertown Speedway on the issues of negligence and gross negligence.

Tennessee courts have recognized, as a general rule, that "negligence cases are not amenable to disposition on summary judgment unless from all the facts taken together and with all the inferences to be drawn and facts and inferences are so certain and uncontroverted that reasonable minds would agree." *Burgess v. Tie Co. 1, LLC*, 44 S.W.3d 922, 923 (Tenn. Ct. App. 2000) (citing *Keene v. Cracker Barrel Old Country Store*, 853 S.W.2d 501 (Tenn. Ct. App. 1992)). In order to bring a successful suit based on a claim of negligence, the plaintiff must establish:

> (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause.

*Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993) (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991); *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 858 (Tenn. 1985)).

Gross negligence is a "negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to

consequences is implied in law." ***Odum v. Haynes***, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972) (citations omitted). "To prevail on a claim of gross negligence in Tennessee, a plaintiff must demonstrate ordinary negligence and must then prove that the defendant acted 'with utter unconcern for the safety of others, or ... with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law....'" ***Menuskin v. Williams***, 145 F.3d 755, 766 (6th Cir. 1998) (citing ***Odum***, 494 S.W.2d at 807).

Duty, the first element of a negligence claim, is the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. ***McCall v. Wilder***, 913 S.W.2d 150, 153 (Tenn. 1995). Whether a defendant owes a duty to a plaintiff in any given situation is a question of law for the court. ***Bradshaw***, 854 S.W.2d at 869.

The existence and scope of the duty of the defendant in a particular case rests on all the relevant circumstances, including the foreseeability of harm to the plaintiff and other similarly situated persons. ***Pittman v. Upjohn Co.***, 890 S.W.2d 425, 433 (Tenn. 1994). Once duty is established, the question of breach of duty and proximate cause of the plaintiff's injury are usually treated as questions of fact. We review the trial court's decision granting summary judgment in favor of defendants on the issues of negligence and gross negligence to determine if a genuine issue of material fact exists as to whether defendants breached the duty of care owed to plaintiff and, if so, whether said breach was the actual and proximate cause of Leatherwood's injuries.

In challenging the trial court's Order granting summary judgment in favor of defendants Wadley and Garnertown Speedway, plaintiffs suggest that reasonable minds could differ as to whether: (1) Wadley posted adequate warning signs alerting spectators to the danger of flying objects and informing them of the "safety, inspection, or nature of the cars being raced" on the Garnertown Speedway premises; (2) defendants were negligent and/or grossly negligent in their inspection of the vehicles racing at Garnertown Speedway; and (3) defendants failed to construct adequate barriers to separate spectators from the racetrack.

Taking the strongest legitimate view of the evidence in favor of plaintiffs as the nonmoving party, and allowing all reasonable inferences in favor of plaintiffs, we find that no genuine issue of material fact exists as to whether defendants Wadley and Garnertown Speedway breached the applicable duty of care by failing to post adequate signs warning spectators that automobile racing is dangerous, alerting them to the hazards of flying objects, and informing spectators of the nature and safety of the racing vehicles, by neglecting to impose sufficient safety inspection measures, or failing to build acceptable barricades.

With regard to the issue of whether adequate signs were displayed at Garnertown Speedway on August 28, Leatherwood testified in his deposition that he did not remember seeing any warning signs posted. When questioned, Leatherwood offered the following responses:

> Q: Do you remember at the racetrack any signs being posted around
> the racetrack?

A: No.

Q: Do you remember specifically seeing any signs posted around the racetrack about any warnings or danger signs at all?

A: No.

Q: Do you know whether or not in fact there were any signs like that out there?

A: I have no idea if there is or not. They may be out there now, or they may have been there then. I can't say whether it was or not because I did not see them.

As further support for his assertion that defendants failed to post adequate warning signs around the speedway, Leatherwood referenced statements from the deposition testimony of Donnie Moore, in which Moore recited that *he only remembered* seeing a warning sign posted at the pit entrance or pit gate warning individuals to enter at their own risk. We quote the following exchange between Donnie Moore and plaintiff's counsel:

Q: Now, you told me about the signing in and the what you believe to be a release, and you told me about the sign there that says enter at own risk or words like that. Any other warning signs around there?

A: Not that I can think of offhand. I ain't saying that there wasn't, you know.

Q: But you didn't see them if there were?

A: I don't remember seeing them.

Defendant Wadley testified that warning signs were posted at both the general admission ticket booth and the pit gate. Wadley testified as follows:

Q: All right. Were there any other requirements that you recall that [the insurance company] required you to do for safety purposes?

A: Put up signs, warning signs, racing is dangerous.

Q: Where? I'm going to give you the green Magic Marker on the signs. Where did you put up warning signs?

-14-

A: Warning signs here at the ticket booth.

Q: All right. Put an "X" there at the ticket booth, then.

A: Then there's warning signs here at the pit gate here also stating racing is dangerous, not responsible for flying objects from cars, dirt, debris, such as that.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Q: (By Mr. Gordon) And describe those signs for me.

A: Just large signs, large letters. One of them is I know red with white writing warning in big letters not responsible for wrecks and accidents, and another sign, I believe it's a white and black, warning not responsible for accidents from parts flying off of vehicles or mud.

Q: Where is that sign located?

A: They're located on the gate that you drive right beside when you go in. When you come to the gate you've to sign a pit form.

Q: And we're talking about the pit gate now?

A: Yes, sir, the pit gate.

Q: What about the one at the general admission?

A: Where you walk through your gates to get your tickets at.

Q: And what does it say?

A: Warning, racing is dangerous, and it has some more things under it.

Q: All right. And then at the pit gate what does that sign say?

A: The same thing, a warning sign stating racing is dangerous and not responsible for flying objects, and that's where you go through the gate to bring your car in to enter the pit.

-15-

Mr. Leatherwood acknowledges that warning signs could have been posted but that he did not see them. In any event, Mr. Leatherwood was a sophisticated race spectator and as such had knowledge of the usual warnings to such spectators.

Additionally, plaintiffs present no evidence to support a finding that defendants negligently breached a duty of care by failing to post signs informing spectators of the inspection measures required by Garnertown Speedway, or the dangerous construction of the racing vehicles.

For the above reasons, we conclude that no genuine issue of material fact exists as to whether defendants posted adequate warning signs at Garnertown Speedway.

In considering whether a genuine issue of material fact exists as to the sufficiency of the vehicle safety inspections required and performed by defendants, we note that the parties are in agreement as to the fact that no routine safety inspections are performed on all of the cars prior to the beginning of a race at Garnertown Speedway.[10] It is undisputed that safety inspections are only required of, and performed on, first-time entrants. Plaintiffs further contend, and defendants concede, that no one from Garnertown Speedway inspected defendant Moore's vehicle immediately before or after the August 28 race. Plaintiffs have not stated any statutory or regulatory authority requiring such inspections. Plaintiffs further assert that defendants neglected to impose safety rules or requirements upon the race participants, for the safety and protection of spectators from known dangers associated with the sport of automobile racing. Again, plaintiffs offer no evidence to support this assertion. In fact, the following testimony of defendant Wadley reveals that defendant explained Garnertown Speedway safety rules to all drivers and pit crew members prior to the beginning of the race schedule, and alerted them to specific dangers in the pit area:

> A: When they get there we have a brief meeting, ten to 15 minutes. I ask them – I thank them all for being there and ask if they have a rule book. If not, they need to have a rule book. I provide them with one, which usually they get one at the gate when they come through, or Jeff will give them one. I'll go over all the safety rules. They have to follow safety rules at all times on the track. Then I discuss race procedures.
>
> ****************************************************
>
> Q: All right. If you would, then, look at the safety rules contained on five, six and seven, I believe that covers all the ones that are in here, and tell me if there are any other safety things that you tell people that night.

---

[10] The parties also agree that returning drivers are not required to provide any proof regarding previous safety checks, inspection records, or any other information pertaining to the performance or safety of the racing vehicle.

A: I tell them any new drivers, any new cars, come to the tech area; the tech man needs to see you. I tell them to be aware of what's happening on the track at all times, to listen to the loudspeakers and watch where they're going in the pits for objects flying, for cars coming through the pits too fast, to watch for kids, anybody parenting watch their kids that could get loose in the pits and get hit. Other than that, that's all I say.

Q: Now, the people who attend, that's the driver and the pit crew, correct?

A: The driver, yes, sir.

Q: And do children come up and listen to those instructions, too?

A: Yeah, quite often.

Q: All right. Is it a requirement that everybody in the pit area come up?

A: Just a requirement for the drivers and the pit crew, and everybody else is asked to come as well.

Q: Are there any other safety precautions taken other than the reading of those rules and the two signs you've told me and the red line barrier or the cable that you put there that you're aware of?

A: I'm not a tech man, but I try to walk by and look at the vehicles, see if they appear safe to me, and also I've got a backhoe I ride around on. I try to look at the vehicles when I go by. You know, that's just habit, check.

Despite the above quoted testimony, plaintiffs fail to introduce evidence to dispute the fact that defendants advised participants of Garnertown Speedway safety rules prior to the races.

Because plaintiffs have not introduced any case law, statute, or regulatory authority to support a finding of negligence on behalf of defendants, we find that no genuine issue of material fact exists as to whether defendants negligently breached their duty of care by failing to conduct sufficient safety inspections of all vehicles prior to the races. We further find that no genuine issue of material fact exists regarding defendants' alleged negligence in failing to advise or instruct drivers and pit crew members of Garnertown Speedway rules and regulations.

With regard to plaintiffs' assertion that reasonable minds could differ as to whether defendants were negligent in failing to construct adequate barriers around Garnertown Speedway to

separate the racing vehicles from spectators, we note that plaintiffs have introduced no evidence to suggest that defendants were in breach of any statutory or regulatory authority pertaining to race track construction or safety standards. Moreover, plaintiffs fail to explain the precise shortcomings of the pit area barricades, and further neglect to identify the exact standard defendants have allegedly violated. Plaintiffs appear to rely upon the general assumption that if adequate safety barriers were in place on the evening of August 28, Leatherwood would not have been injured, and therefore, because he was injured, the barricades could not have been in sufficient compliance with acceptable safety norms. This assumption, unsupported by statutory or regulatory authority, is insufficient to create a genuine issue of material fact as to whether defendant constructed inadequate barriers and, if so, whether this failure constitutes a breach of the duty of care owed by Wadley and Garnertown Speedway.

For the reasons stated above, plaintiffs' first issue is without merit.

## II.

Plaintiffs' next issue is whether the trial court erred in granting summary judgment in favor of defendant Moore on the issues of negligence and gross negligence. Plaintiffs argue:

> [R]easonable minds could differ whether said Defendant was guilty of negligence and/or gross negligence in his construction and/or assembly of a race car from parts of unknown origin, quality, and/or safety, and racing of the same at speeds of 80 to 90 miles per hour on an unlicensed dirt track without any type of inspection and/or verification of the safety of the cars, the wheels or the track.

Beginning first with plaintiffs' assertion that reasonable minds could differ as to whether Moore acted negligently (at the very least) in building and assembling his GRT racing vehicle of parts of unknown origin, quality, and safety, we are persuaded by defendant's argument that the "defect" that caused the center of the wheel to break was latent in nature, and therefore undetectable and unforeseeable. The evidence is undisputed that both defendant Moore and his brother, Donnie Moore, testified that they had never seen a racing wheel break from the center. Despite this testimony, plaintiffs present no evidence to indicate that defendant Moore should have anticipated or been aware of the possibility that his wheel would break from the center, and further fail to prove that the particular wheel used by defendant during the August 28 race was known to possess such a defect. Aside from defendant Wadley's acknowledgment that wheels have been known to fly off of cars during races, there is absolutely no evidence to prove that defendant Moore, under the circumstances of this case, should have been aware of the specific defect that caused his wheel to break. We therefore find that Moore's knowledge or lack of knowledge regarding the origin, quality, or safety of the "defective" wheel is irrelevant, as plaintiffs have failed to demonstrate that an issue of fact exists as to whether the defect in this case was latent in nature. Without such evidence, there can be no genuine issue of material fact as to whether Moore breached his duty of care to Leatherwood.

Plaintiffs' assertion that participation in an automobile race on an unlicensed track constitutes negligence, appears to be premised on the notion that the track is operated in violation of state statute, anyone racing on the track is thereby engaged in a negligent act that threatens inherent danger to spectators who have unknowingly visited an unlicensed track. It is undisputed that Garnertown Speedway was not licensed on August 28, 1998. According to the deposition testimony of defendant Wadley, defendant has since obtained a license to operate Garnertown Speedway. Wadley testified that no one from the State of Tennessee inspected Garnertown Speedway prior to issuing the license, as apparently the only requirement defendant Wadley had yet to fulfill was the payment of a $100.00 operating fee. On the basis of this undisputed testimony, we find that the track was not unlicensed as a result of inadequate safety measures, or because it created an illegal and inherent risk to spectators, but only because the owner had neglected to pay a mandatory operating fee. We therefore find that no genuine issue of material fact exists as to whether Moore was negligent in participating in a dirt track race at an unlicensed speedway, where the only reason for Garnertown Speedway's noncompliance with the Tennessee licensing statute was defendant Wadley's inadvertent failure to pay the required operating fee.

Finally, as noted, plaintiffs have introduced no evidence to refute the fact that the accident of August 28 was caused by a latent defect, the type of which Moore could not have foreseen or prevented. For this reason, the issue of whether Moore was negligent in his alleged failure to inspect or verify the safety of his wheels is foreclosed. On this basis, we find that plaintiffs have not demonstrated a genuine issue of material fact as to whether Moore's failure to inspect or verify the safety of his wheels constitutes a breach of the duty of care allegedly owed to Leatherwood.[11]

As stated, in order to prevail on a gross negligence claim in Tennessee, a plaintiff must first prove ordinary negligence. *See Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998). Therefore, because plaintiffs have not introduced sufficient evidence to support a claim of ordinary negligence against Moore, plaintiffs' gross negligence claim must also fall.

This issue is therefore without merit.

### III.

The next issue presented by plaintiffs for review is whether the trial court erred in granting summary judgment in favor of defendants Wadley, Garnertown Speedway, and Moore on the issue of strict liability for operation and promotion of, or participation in, the ultrahazardous activity of automobile racing. As part of their Second Amended Complaint, plaintiffs specifically assert:

> [T]hat the operation and activities of conducting the business of promoting the racing of automobiles on a race track where the public

---

[11] As for plaintiffs' assertion that Moore's failure to inspect or verify the safety of the racetrack and the other participating vehicles constituted negligence or gross negligence, we note that plaintiffs have not cited to any case law or statutory authority to support a finding that a race car driver has committed a breach of his duty of care to a spectator by failing to engage in a safety inspection of the track or other competing vehicles. Plaintiffs' argument is therefore without merit.

-19-

is invited to observe imposed upon the said Defendants' <u>strict liability</u> for the operation of an inherently dangerous and ultra-hazardous activity and, as a result of the operation of such activity, the Defendants, Joseph Scott Wadley, Garnertown Speedway and/or Joseph Scott Wadley d/b/a Garnertown Speedway, had a nondelegable duty to protect Plaintiff, Charles Leatherwood, and are strictly liable to the Plaintiff, Charles Leatherwood, for his injuries as a matter of law under the common law of Tennessee.

Plaintiffs aver that the Defendant, Wayne Moore was likewise engaged in an ultra-hazardous and inherently dangerous activity and was participating in the racing of automobiles at an unlicensed and illegally operated race track in close proximity to the public, and as a direct and proximate result thereof, the Plaintiff, Charles Leatherwood, was injured. Under the common law of Tennessee, said Defendant had a nondelegable duty to protect Plaintiff, Charles Leatherwood, and is strictly liable to the Plaintiff, Charles Leatherwood, for his injuries resulting from his participation therein under strict liability.

(Emphasis in original).

In Tennessee, defendants engaged in ultrahazardous activities are held strictly liable for injuries caused to the person or property of another by defendant's participation in the activity. ***See England v. Burns Stone Co., Inc.***, 874 S.W.2d 32, 37 (Tenn. Ct. App. 1993). The negligence or care exercised by the defendant in carrying out said activity is irrelevant. ***See Miller v. Alman Constr. Co.***, 666 S.W.2d 466, 468 (Tenn. Ct. App. 1983) (citations omitted).

This is a case of first impression in the State of Tennessee. Courts in this state have traditionally classified ultrahazardous activities as those presenting an abnormally dangerous risk of injury to persons or their property, including the carrying out of blasting operations, the storage of explosives or harmful chemicals, and the harboring of wild animals. Our Supreme Court has determined that automobiles are not considered "dangerous instrument[s], so as to be classed with locomotive engines, dangerous animals, explosives, and the like...." ***Goodman v. Wilson***, 129 Tenn. 464, 166 S.W.2d 752, 753 (Tenn. 1914). From this statement, one can naturally infer that the operation of an automobile is not an ultrahazardous activity.

Plaintiffs cite to the Restatement (Second) of Torts § 520, ***Abnormally Dangerous Activities***, as authority for the argument that automobile racing is an ultrahazardous activity, whereby a defendant is subject to strict liability for any harm resulting from defendant's engagement in said

-20-

activity. Section 520 sets out the following factors[12] for determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977).

Applying these factors to the circumstances before us, we note that although automobile racing, as with many other sporting activities, carries with it a potential risk of injury to participants and spectators voluntarily situated among the cars, competitors, and action of the pit area, such risk of injury is incomparable to the high degree of risk normally associated with such ultrahazardous activities as blasting and the storage of highly toxic chemicals. The potential risks are not sufficient to impose the operator or participants with the duty of an insurer.

We note that the racing of automobiles on a track constructed specifically for this purpose has become a matter of common usage in the State of Tennessee and throughout the nation. Comment (I) is particularly relevant to this point:

> Certain activities, notwithstanding their recognizable danger, are so generally carried on as to be regarded as customary. Thus automobiles have come into such general use that their operation is a matter of common usage. This, notwithstanding the residue of unavoidable risk of serious harm that may result even from their careful operation, is sufficient to prevent their use from being regarded as an abnormally dangerous activity. On the other hand, the operation of a tank or any other motor vehicle of such size and weight as to be unusually difficult to control safely, or to be likely to damage the ground over which it is driven, is not yet a usual activity for many people, and therefore the operation of such a vehicle may be abnormally dangerous.

Restatement (Second) of Torts § 520, cmt. (I) (1977).

---

[12] No single factor is dispositive of the question of whether an activity is abnormally dangerous. In determining whether the danger is abnormal, a court must balance all relevant factors.

Although comment (I) does not specifically address the act of driving a motor vehicle in a competitive context, we are persuaded that the operation of a racing vehicle on a surface or track specifically engineered and constructed for said operation, is more logically equated with the normal, everyday use of a consumer vehicle, as compared to the rare and often destructive operation of a tank. Further, this court is not convinced that stock cars and racing vehicles such as the one built and operated by defendant Moore, are "of such size and weight as to be unusually difficult to control safely...." Therefore, factor (d), in light of comment (I), weighs against a holding that automobile racing is an ultrahazardous activity.

Recognizing that automobile racing is a matter of common usage in the State of Tennessee, we further note that Garnertown Speedway was an appropriate venue for this activity. Despite plaintiffs' suggestion to the contrary, the fact that Garnertown Speedway was an unlicensed racetrack at the time of Leatherwood's injury is irrelevant to the question of whether Garnertown Speedway was an appropriate venue for automobile racing. Although Garnertown Speedway was not licensed as of August 28, it was specifically constructed and recognized as a racing speedway, and therefore the hosting of races at this location could not be deemed to create an abnormal risk of danger – especially considering the fact that Garnertown Speedway was unlicensed only because defendant Wadley inadvertently neglected to pay the required $100.00 operating fee, and not for the reason that Garnertown Speedway was constructed in an abnormally dangerous or unsafe manner. Factor (e) therefore argues against a finding that automobile racing, in the context of this case, was an ultrahazardous activity.

Factor (f) requires a court to weigh the benefits of the activity to the community against the dangerous attributes of the conduct. Plaintiffs suggest that the racing of automobiles on an unlicensed track "where inadequate safety measures were taken," holds "no social value whatsoever" to the community. We are unpersuaded by plaintiffs' argument for reasons already discussed. First, plaintiffs have produced no evidence to demonstrate that a genuine issue of material fact exists as to whether appropriate safety measures were implemented at Garnertown Speedway. Second, Garnertown Speedway was an unlicensed racetrack on August 28 solely because of defendant Wadley's inadvertent failure to pay a statutorily mandated operating fee, and not because the speedway contained inadequate safety barriers or warnings. Therefore, § 502 (f) does not necessitate a finding that automobile racing is an ultrahazardous activity.

Based on our analysis and weighing of the § 502 factors, we conclude that Wadley's operation and promotion of automobile racing at Garnertown Speedway, and Moore's participation in the August 28 race, do not constitute abnormally dangerous activities to which strict liability attaches.

Our decision is further buttressed by a 1953 decision of the Superior Court of Pennsylvania. **Blake v. Fried,** 173 Pa. Super. 27, 95 A.2d 360 (Pa. 1953). In **Blake,** Pennsylvania's high court considered plaintiff-spectator's action to recover damages based on defendant-stadium owner's alleged negligent installation of a timber guard rail. **Id**. at 361. The Court drew the following comparison between ultrahazardous and non-ultrahazardous activities:

> Blasting is properly within the category of ultrahazardous activities but the analogy to the present situation is imperfect. Blasting involves such high degree of danger that the law, while not enjoining the activity because of its social utility, will nevertheless hold the blaster liable without a showing of negligence. It cannot with reason be said that a person who watches a stock car race from his seat in the stadium is exposed to danger of the same almost certain degree as he would be if he were in similar proximity to an explosion of dynamite. In the final analysis, whether or not the courts should impose absolute liability in connection with the maintenance of a particular type of activity is a problem in social engineering.

*Id*. at 365.

We are persuaded by the reasoning and rationale of the Superior Court of Pennsylvania, and on the basis of the arguments above, we find that the trial court did not err in concluding that automobile racing is not an ultrahazardous activity. Plaintiffs' issue is therefore without merit.

**IV.**

The next issue for review is whether the "[t]he trial court erred in finding, as a matter of law, that Defendant Wayne Moore was not liable under strict products liability as defined in T.C.A. § 29-28-102." Plaintiffs' claim under the Tennessee Products Liability Act is premised on the argument that Moore, as the manufacturer/assembler of the race car involved in the August 28 accident, is strictly liable for any injuries suffered by Leatherwood "as a result of the unreasonably dangerous or defective nature of the product placed on the race track and used by the Defendant, Wayne Moore...."

Section 29-28-105(a) provides:

> A manufacturer or seller of a product shall not be liable for any injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

T.C.A. § 29-28-105(a) (2000).

"Manufacturer" is defined in T.C.A. § 29-28-102(4) (2000) to mean "the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts."

Taking the record as a whole, and giving every reasonable inference in favor of plaintiffs as the nonmoving party, we nonetheless find that no genuine issue of material fact exists as to whether Moore is a manufacturer as defined in T.C.A. § 29-28-102(4). It is undisputed that defendant Moore separately purchased and personally installed the engine, chassis, and wheel components of the car

he raced on August 28 at Garnertown Speedway. Plaintiffs maintain that Moore's "assembly" of the GRT racing vehicle qualifies defendant as a manufacturer under T.C.A. § 29-28-102(4). We disagree.

First, there is absolutely no case law or statutory authority in Tennessee to suggest that an individual who "assembles" a recreational vehicle for his personal use and enjoyment qualifies as a manufacturer under the Tennessee Products Liability Act. To extend this "manufacturer" classification to persons who assemble such "products" for their own use, with absolutely no intention of selling, delivering, or leasing the vehicle to another individual, would unnecessarily and unjustly impose strict liability on people engaged in an acceptable practice of self-help or personal fulfillment. This is evidenced by the provisions of T.C.A. § 29-28-102(8) referring to "the ordinary consumer who purchases it" and "would not be put on the market by a reasonably prudent manufacturer." We find it difficult to imagine that the legislature intended to include as a manufacturer, under the guidelines of the Tennessee Products Liability Act, a homeowner who decides to assemble a riding lawnmower from spare parts for use on his own lawn, or an ambitious teenager who undertakes to build his dream car from the ground up, using parts purchased from various manufacturers and retailers. All such individuals, if we were to accept plaintiffs' interpretation, would qualify as manufacturers under T.C.A. § 29-28-102.

Second, the language of T.C.A. § 29-28-105(a) dictates that strict liability applies when injury results from a product that is in a "defective or unreasonably dangerous condition *at the time it left the control of the manufacturer.*" (emphasis added). From the above quoted language, we note that a product must actually leave the control of the manufacturer, and infer that a party must possess at least some shred of intent to voluntarily relinquish control of a product in order to be held strictly liable as a manufacturer under the statute. The facts in this case reveal that the GRT racing vehicle "assembled" by Moore never left the control of defendant, and there is absolutely no evidence that Moore constructed the vehicle with the intention of selling, leasing, trading, or loaning the car to another individual.

For these reasons, we find that no genuine issue of material fact exists as to whether Moore is a manufacturer under T.C.A. § 29-28-102.

Plaintiffs additionally argue that Leatherwood, as an innocent bystander, is nonetheless "entitled to recovery under strict product liability." Our finding that Moore is not a manufacturer under T.C.A. § 29-28-105 forecloses consideration of this issue.

**V.**

The final issue on appeal is whether the trial court "erred in failing to find that Plaintiffs were entitled to all reasonable and favorable inferences." Specifically, plaintiffs argue:

> Despite the fact that Mr. Moore does not know where the wheel is nor what happened to the wheel after the wheel flew from his vehicle, the learned trial court determined that there was a latent defect in the wheel which caused injury to Mr. Leatherwood and that

the defect could not have been discovered. By making this determination, the court failed to apply the adverse presumption due to the loss or destruction of evidence and failed to draw all reasonable and favorable inferences in favor of the opponent of the motion for summary judgment.

Plaintiffs' argument is premised on the doctrine of spoliation of evidence. This doctrine permits a court to draw a negative inference against a party that has intentionally, and for an improper purpose, destroyed, mutilated, lost, altered, or concealed evidence. *See Foley v. St. Thomas Hosp.*, 906 S.W.2d 448, 453-54 (Tenn. Ct. App. 1995) (cited in *Eady v. Cigna Prop. & Cas. Companies*, No. M1998-00524-SC-WCMCV, 1999 WL 1253092, at \*2 (Tenn. Dec. 27, 1999)). *See also Thurman-Bryant Elec. Supply Co., Inc. v. Unisys Corp., Inc.*, No. 03A01-CV00152, 1991 WL 222256, at \*5 (Tenn. Ct. App. Nov. 4, 1991).

This record is devoid of any facts or evidence to suggest that Moore intentionally destroyed, lost, or concealed the "defective" wheel for the improper purpose of keeping crucial evidence from the court. Plaintiffs, moreover, fail in their brief to allege improper intent on Moore's behalf. While Moore admits that he removed the wheel from his car after the accident, and has no recollection of where or whether he disposed of the "defective" part, this testimony, alone, is insufficient to demonstrate the necessary intent required under this doctrine. On this basis, we find plaintiffs' final issue without merit.

## VI.

In conclusion, we affirm the trial court's Orders granting summary judgment to defendants Joseph Scott Wadley, Garnertown Speedway, and/or Joseph Scott Wadley d/b/a Garnertown Speedway, and Wayne Moore. Costs are assessed against plaintiffs, Charles Leatherwood and Shelby Leatherwood, and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.